# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MARSHALL COUNTY COAL RESOURCES,**
Employer Below, Petitioner

**v.) No. 25-ICA-140**     (JCN: 2024007694)

**COLBY YARBROUGH,**
Claimant Below, Respondent

**FILED**

**December 4, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Marshall County Coal Resources ("MCCR") appeals the March 6, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Colby Yarbrough filed a response.[1] MCCR did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which denied a request for retroactive authorization of an MRI of the left ankle and denied authorization for surgery for primary repair of the anterior talofibular ligament ("ATFL").[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the Board's decision is vacated and remanded for further proceedings consistent with this decision.

On October 19, 2023, Mr. Yarbrough sustained an injury to his left ankle when he rolled his ankle while working for MCCR in an underground coal mine. The injury occurred when Mr. Yarbrough slipped on a wet rock, rolled his left ankle, and fell. He completed an Employees' and Physicians' Report of Occupational Injury or Disease dated October 20, 2023, when he received treatment for the injury at Wheeling Hospital Emergency Department. Gail Nickerson, FNP, a treatment provider at the hospital, completed the physician's section of the form and diagnosed Mr. Yarbrough with a left ankle sprain and left ankle pain as the result of an occupational injury. The October 20, 2023, treatment notes from the hospital show that a left ankle x-ray showed no acute bony

---

[1] MCCR is represented by Aimee M. Stern, Esq. Mr. Yarbrough is represented by Sandra K. Law, Esq.

[2] The Board's order also reversed the claim administrator's order that denied a request to add sprain of ATFL of left ankle to the claim. MCCR does not appeal this issue.

1

abnormality. Mr. Yarbrough was placed in an air cast, as he needed stabilization of the ankle, and was discharged from the hospital.

Subsequently, Ross A. Tennant, NP, began to treat Mr. Yarbrough for his left ankle injury. On October 25, 2023, Nurse Tennant examined Mr. Yarbrough's left ankle and noted some diffuse edema, resolving ecchymosis, and tenderness over the lateral malleolus and ATFL. Mr. Yarbrough's gait was noted to be antalgic, favoring his left side. Nurse Tennant took Mr. Yarbrough off work and ordered physical therapy, which commenced on October 26, 2023. The claim administrator issued an order on October 30, 2023, holding the claim compensable for a sprain of an unspecified ligament of the left ankle.

A radiologist reported that an MRI performed on November 17, 2023, showed normal signal and morphology of the ligaments, including the ATFL. The radiologist reported that the cause of Mr. Yarbrough's symptoms was not further defined by the study. On January 2, 2024, Danny R. Fijalkowski, DPM, examined Mr. Yarbrough, who reported that his ankle was still painful and swelled with activity. Mr. Yarbrough's gait was noted to be antalgic. Dr. Fijalkowski reviewed the MRI and interpreted it as showing an increased signal involving the posterior margin of the subtalar joint and along the anterior lateral aspect of the ankle. However, Dr. Fijalkowski said the MRI did not show any clear evidence of a tendon or ligament tear, fracture, or a talar dome defect. Dr. Fijalkowski noted that Mr. Yarbrough pointed to the lateral and medial aspects of his ankle as the source of his pain. Further, Dr. Fijalkowski noted difficulty in assessing ankle instability due to guarding. Mr. Yarbrough told Dr. Fijalkowski that he had sprained his left ankle multiple times over the years, estimating at least twenty times. Dr. Fijalkowski diagnosed a sprain of the left ankle and left ankle pain of unspecified chronicity. Physical therapy was continued, and an ankle brace was ordered. In a follow-up visit on February 20, 2024, Dr. Fijalkowski noted some progress, and found that the brace helped with stability. However, on examination, some frontal plane laxity was noted, and Mr. Yarbrough reported pain with palpation of the area of the ATFL. Dr. Fijalkowski continued to keep Mr. Yarbrough off work.

On March 12, 2024, Prasadarao B. Mukkamala, M.D., performed an independent medical examination of Mr. Yarbrough. Dr. Mukkamala noted that Mr. Yarbrough acknowledged that he had multiple sports-related injuries to his left ankle in the past. Upon examination, Dr. Mukkamala noted that Mr. Yarbrough walked with a limp on the left. Dr. Mukkamala placed Mr. Yarbrough at maximum medical improvement for the injury and opined that he should be able to return to work, although he needed to continue wearing the brace at work. Dr. Mukkamala's overall impairment rating for the ankle and foot was 4% whole person impairment based on mild range of motion limitations; however, Dr. Mukkamala apportioned 2% impairment to the prior history of ankle injuries, and the remaining 2% impairment to the compensable injury.

On March 26, 2024, Dr. Fijalkowski again examined Mr. Yarbrough. Frontal plane laxity, pain in and around the foot and ankle, including the area of the left ATFL, were noted. Dr. Mukkamala's findings and report had not yet been received. Dr. Fijalkowski continued physical therapy, the use of the ankle brace, and kept Mr. Yarbrough off work. An x-ray of the left tibia-fibula was ordered. The x-ray, performed on April 19, 2024, showed no acute abnormality. Mr. Yarbrough followed up with Dr. Fijalkowski on June 4, 2024. Pain responses were similar to those in previous visits, and Dr. Fijalkowski observed that Mr. Yarbrough continued to have an antalgic gait. Dr. Fijalkowski reviewed the MRI from 2023 and noted that it showed significant fluid along the ATFL. Dr. Fijalkowski ordered a repeat study to check the status of the ligament. The repeat MRI, performed on June 21, 2024, as read by the radiologist, revealed intact lateral ankle ligaments, but a likely prior lateral ankle sprain with attenuation of the intact ATFL was noted. No evidence of bony edema or fracture was seen. On July 15, 2024, at an office visit, Mr. Yarbrough told Dr. Fijalkowski that his ankle felt weak, unstable, and as if it was going to give out. He had to minimize his activity, and he continued to have significant pain at times. Dr. Fijalkowski continued to note an antalgic gait. Dr. Fijalkowski diagnosed a sprain of the ATFL of the left ankle, and he discussed a surgical repair of the ligament in combination with platelet-rich plasma. Mr. Yarbrough agreed with the plan. On July 29, 2024, Dr. Fijalkowski completed a Diagnosis Update in which he requested that the sprain of ATFL in the left ankle be added as a compensable condition in the claim.

By order dated August 1, 2024, the claim administrator denied Dr. Fijalkowski's request to add a sprain of ATFL of the left ankle to the claim. The claim administrator also denied a retroactive request for authorization of an MRI of the left ankle and surgery for repair of the ATFL of the left ankle. The claim administrator noted that retroactive authorization is not allowed, and the diagnosis update and surgery were denied based on Dr. Mukkamala's report. Mr. Yarbrough appealed the claim administrator's order to the Board.

On August 22, 2024, Dr. Fijalkowski performed a repair of a disrupted ATFL on the left. The postoperative diagnosis was a sprain of ATFL on the left. In his operative notes, Dr. Fijalkowski indicated that the ATFL was "thickened with hypertrophic granulation," which was excised. The ligament was sutured, and the ankle and foot were noted to have no range of motion restriction or laxity.

On November 6, 2024, Ronald J. Fadel, M.D., performed a record review and opined that Mr. Yarbrough sustained a sprain of the ATFL of the left ankle as a result of the work injury. However, Dr. Fadel concluded that the updated MRI and surgery were not medically related to or reasonably required as a result of Mr. Yarbrough's work injury. Instead, Dr. Fadel noted that Mr. Yarbrough had a prior history of multiple left ankle sprains. Dr. Fadel also noted that in March of 2024, Dr. Mukkamala found that Mr. Yarbrough did not require any further treatment for the work injury. Dr. Fadel determined that Dr. Fijalkowski performed a ligamentous reconstruction rather than a repair of a tear

3

and that there was no evidence of an acute tear, which would support a work injury. Thus, Dr. Fadel determined that the surgery was "elective" and performed in order to reduce the ligamentous laxity caused by the prior repetitive sprains. The repeat MRI, Dr. Fadel added, was only necessary for operative planning.

On March 6, 2025, the Board reversed the claim administrator's order and held the claim compensable for ATFL of the left ankle. In addition, the Board also reversed the claim administrator's denial of the MRI and left ankle surgery, finding that the treatments were reasonable, necessary, and related to the compensable injury. MCCR now appeals the Board's order with respect to the Board's authorization of the treatment.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

MCCR argues that the Board erred in failing to discuss Dr. Fadel's conclusion that the surgery and pre-surgical MRI were directed toward ligamentous laxity caused by Mr. Yarbrough's numerous prior ankle sprains rather than the compensable sprain injury. We agree.

In its analysis, the Board noted that Dr. Fijalkowski requested that ATFL sprain be added as a compensable condition and that Dr. Fadel agreed that the condition resulted from the work injury. In this instance, the Board did not make, nor did it necessarily need to make, any distinguishing findings to weigh Dr. Fijalkowski's and Dr. Fadel's opinions because the two doctors agreed about the compensability of the ATFL sprain.

4

However, when it addressed the issue of whether the repeat MRI and surgery were properly denied, the Board failed to provide any analysis of Dr. Fadel's opinion or make any finding about the weight given to Dr. Fadel's report. Instead, the Board noted that even though Mr. Yarbrough complained of pain in his ankle and walked with a limp on the left side at the time Dr. Mukkamala placed him at maximum medical improvement, and found that no further treatment was needed. The Board also noted that a couple of months later, Dr. Fijalkowski noted that Mr. Yarbrough continued to complain of pain and walk with a limp. The Board determined that given Mr. Yarbrough's unresolved symptoms, Dr. Fijalkowski's request for a repeat MRI was reasonable and necessary for the compensable injury.

Regarding the surgery requested by Dr. Fijalkowski, the Board found that although Mr. Yarbrough had a history of prior left ankle injuries, there was no evidence that he was receiving treatment prior to the compensable injury. Further, the Board pointed out that following the surgery, Mr. Yarbrough's condition improved such that he was able to return to work without restrictions, and that "the evidence demonstrates that the requested surgery was reasonable, necessary and related to the claimant's compensable injury." Thus, the Board again failed to provide an analysis of Dr. Fadel's opinion about the surgery.

Upon review, we find that with respect to the treatment issues, the Board was clearly wrong in failing to analyze, or address in any way, Dr. Fadel's report. As we held in *Boyce v. Quinwood Coal Co., LLC*, No. 24-ICA-346, 2025 WL 2792731, at *4 (W. Va. Ct. App. Oct. 1, 2025), "this Court has consistently stated that it is not in a position to reweigh the evidence at the appellate stage." *See also West Virginia Department of Health and Human Resources Office of Health Facility Licensure and Certification v. Heart 2 Heart Volunteers, Inc. d/b/a Serenity Hills Life Center*, 249 W. Va. 464, 470, 896 S.E.2d 102, 108 (Ct. App. 2023) (citing Syl. Pt. 3, *Frazier v. Ramadan*, 249 W. Va. 170, 895 S.E.2d 25 (2023)). Further, the Supreme Court of Appeals of West Virginia has found that West Virginia Code § 23-4-1g(a)

> vests the factfinder in a workers' compensation case with a statutory duty "to weigh the conflicting medical opinions in terms of 'relevance, credibility, materiality and reliability ... in the context of the issue presented.'" In weighing the evidence, the factfinder is required to perform a complete analysis and "consider the entire record, clarify inconsistencies, and adequately explain her reasons for choosing one medical opinion over the other."

*Workman v. ACNR Res., Inc.*, 251 W. Va. 796, ___, 916 S.E.2d 638, 643 (2025), quoting *Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011 (W. Va. November 13, 2024) (memorandum decision).

We acknowledge that we view the Board's opinions under a clearly wrong standard of review. However, this deferential standard does not relieve the Board from addressing the evidence submitted and meritorious arguments made by the parties. In remanding, we emphasize that our decision should not be seen as somehow forecasting the outcome of the case. We direct that the Board provide an analysis of the evidence.

Accordingly, we vacate the Board's March 6, 2025, order and remand the claim to the Board for further analysis consistent with this opinion.

Vacated and Remanded.

**ISSUED:** December 4, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White